# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CAL DIVE INTERNATIONAL, INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 15-10458 (CSS)<br><br>(Jointly Administered) |
| Cal Dive Offshore Contractors, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>Oracle America, Inc.,<br><br>Defendant. | **Adv. No. Refer to Summons** |

## COMPLAINT TO AVOID AND RECOVER
## TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550

Cal Dive Offshore Contractors, Inc., a debtor and debtor-in-possession in the above-referenced bankruptcy cases (the "Transferor Debtor" or "Plaintiff"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Oracle America, Inc. (the "Defendant"). In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property made by the Transferor Debtor that occurred during the ninety (90) day period prior to the commencement of the bankruptcy cases of Cal Dive International, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 547 and 550 of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Cal Dive International, Inc. (0501), Cal Dive Offshore Contractors, Inc. (4878), Affiliated Marine Contractors, Inc. (8678), Fleet Pipeline Services, Inc. (2104), Gulf Offshore Construction, Inc. (2106), and CDI Renewables, LLC (4985). The Debtors' corporate headquarters is at 2500 CityWest Boulevard, Suite 2200, Houston, TX 77042.

{00019835. }

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re Cal Dive International, Inc., et al.,* Case No. 15-10458 (CSS), pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. The statutory and legal predicates for the relief sought herein are sections 547, 548 and 550 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

6. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

7. On March 3, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

8.      On March 6, 2015, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). [

**THE PARTIES**

9.      Plaintiff, a debtor and debtor in possession in these chapter 11 cases, is a Delaware corporation having its principal place of business at 2500 CityWest Boulevard, Suite 2200, Houston, TX 77042.

10.     Upon information and belief, the Defendant is either a corporation, partnership, governmental unit, individual, or other entity that transacted business in the United States with one or more of the Debtors and who received one or more transfers from the Transferor Debtor.

11.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods or services to or for the Debtors.

12.     Upon further information and belief, at all relevant times, Defendant's principal place of business is the location set forth on **Exhibit A** attached hereto and incorporated herein by reference.

**FACTUAL BACKGROUND**

13.     As more fully discussed in the *Declaration of Quinn J. Hébert in Support of Debtors' Chapter 11 Petitions and First Day Pleadings,* prior to the wind-down of the Debtors' operations, the Debtors and their non-debtor foreign affiliates (the "Non-Debtor Affiliates," and together with the Debtors, the "Cal Dive Group") constituted a global marine contractor that provided highly specialized manned diving, pipelay and pipe burial, platform installation and salvage, and well-intervention services to a diverse customer base in the offshore oil and gas industry. Headquartered in Houston, the Cal Dive Group operated in the Gulf of Mexico Outer

Continental Shelf, the United States, Latin America, Southeast Asia, China, Australia, West Africa, the Middle East, and Europe.

14.     Prior to the Petition Date, the Debtors, as providers of goods and services in the oil and gas industry, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

15.     The Debtors regularly purchased goods and services from various entities including vendors, creditors, suppliers and distributors.  Transferor Debtor also regularly paid for such goods and services used to facilitate the Debtors' business.

16.     The Debtors' decision to commence these cases was prompted by two principal factors.  During 2014, the Cal Dive Group's utilization levels and, in turn, liquidity suffered as a result of delays in projects outside the Cal Dive Group's control.  Above all, unusually adverse and sustained weather disruptions—a special concern for a business that operates in water depths of up to 1,000 feet—forced the postponement of anticipated construction projects, impeding the Cal Dive Group's ability to invoice, collect for work performed, and recoup capital outlays.

17.     Meanwhile, other offshore contractors, whose tasks must be completed before the Cal Dive Group can complete its projects, fell behind schedule and deprived the Cal Dive Group of valuable workdays.  The consequences of these delays were most evident in the Cal Dive Group's construction operations in Mexico, where two major projects with Petróleos Mexicanos ("Pemex"), the Cal Dive Group's largest customer, were repeatedly put on hold because of weather disruptions and performance issues with other contractors.  Given that the Cal Dive Group has outlaid substantial capital for the Pemex projects, the delay—in both completing and receiving payment for them dramatically impacted liquidity, restricted the Debtors' ability to

fund their business activities, and ultimately led to a covenant default under their lending facilities in summer 2014.

18.     Determined not to allow these events to dictate the Cal Dive Group's fate, the Debtors in summer 2014 initiated negotiations to obtain replacement financing to improve liquidity.  Engaging with creditors across their capital structure and numerous potential third-party capital providers, the Debtors worked continuously to achieve a refinancing solution to their liquidity constraints, which were exacerbated by contractual step-downs in the availability under their pre-petition senior revolver credit facility as well as over $100 million in working capital outlays tied up in four Pemex projects.  In the midst of these exhaustive efforts, oil prices plummeted.  The ensuing uncertainty about future oil prices introduced an additional, unexpected obstacle that impeded refinancing efforts.  Unable to secure the financial flexibility they required, the Debtors commenced these chapter 11 cases.

*The Debtors' Cash Management System*

19.     As of the Petition Date, the Debtors utilized an integrated cash management system (the "Cash Management System") for the operation and administration of the Debtors' business. The Cash Management System included seven bank accounts, five at Amegy Bank of Texas ("Amegy") and two at Wells Fargo Bank, N.A.

20.     The Debtors' primary operating account (the "Transferor Debtor Operating Account") is maintained at Amegy in the name of the Transferor Debtor. The Debtors used the Transferor Debtor Operating Account to make nearly all domestic non-payroll-related payments and disbursements related to their business operations.  Electronic payments were made directly from the Transferor Debtor Operating Account; where vendors or suppliers present hard-copy

checks issued by the Debtors, those checks are honored via funds transferred from the Transferor Debtor Operating Account to a linked Amegy zero-balance checking account.

21.     During the ninety (90) days before the Petition Date, that is between December 3, 2014, and March 3, 2015 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

22.     Upon information and belief, during the course of their relationship, the Debtors and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to the Debtors.

23.     The Debtors and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

24.     The Debtors purchased goods and/or services from Defendant pursuant to the Agreements.

25.     Plaintiff is seeking to avoid all of the transfers of an interest of the Transferor Debtor's property made by Transferor Debtor to Defendant within the Preference Period.

26.     Plaintiff has determined that it made transfer(s) of an interest of its property to or for the benefit of Defendant during the Preference Period through the payments set forth on **Exhibit A** (the "Transfer" or "Transfers"). The details of each Transfer are set forth on **Exhibit A** attached hereto and incorporated by reference.

27.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period.  It is Plaintiff's intention to avoid and recover all transfers made by one or more of the Debtors of an

interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, (v) additional Plaintiff Debtors; and/or (vi) additional causes of action; *e.g.*, but not exclusively, 11 U.S.C. §§ 542, 544, 545, and/or 549 (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

28.   Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29.   During the Preference Period, Transferor Debtor made Transfers to or for the benefit of Defendant in amounts not less than those set forth on Exhibit A.

30.   Each Transfer was made to or for the benefit of Defendant by Transferor Debtor.

31.   Each Transfer was paid from the Transferor Debtor Operating Account described *supra,* and constituted a transfer(s) of an interest in property of Transferor Debtor.

32.   Upon information and belief, Defendant was a creditor of the Transferor Debtor at the time of each Transfer by virtue of supplying goods and/or services to the Transferor Debtor for which the Transferor Debtor was obligated to pay in accordance with the Agreements. See Exhibit A.

33.   Upon information and belief, each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by Transferor Debtor to Defendant. See Exhibit A.

34. Upon information and belief, each Transfer was made for, or on account of, an antecedent debt or debts owed by Transferor Debtor to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by Transferor Debtor. See Exhibit A.

35. Each Transfer was made while Transferor Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

36. Each Transfer was made during the Preference Period. See Exhibit A.

37. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) Transferor Debtor's case were under chapter 7 of the Bankruptcy Code; (ii) the Transfer(s) had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by Transferor Debtor's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, Transferor Debtor's liabilities exceed it assets to the point that unsecured creditors will not receive a full payout of their claims from the Transferor Debtor's bankruptcy estate.

38. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

39. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

40. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, or was a prepayment for goods and/or services, and/or was a

debt incurred by another Debtor but paid by the Transferor Debtor, Plaintiff pleads in the alternative that Transferor Debtor did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

    A.    Transferor Debtor was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

    B.    Transferor Debtor was engaged, or about to engage, in business or a transaction for which any property remaining with Transferor Debtor or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

    C.    Transferor Debtor intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

41. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

43. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and/or any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (together, the "Avoidable Transfers").

44. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant Plaintiff the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b) and/or 548 and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees; and

B. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: March 2, 2017
Wilmington, DE 19801

THE ROSNER LAW GROUP LLC

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: 302-777-1111
Email: rosner@teamrosner.com

*Counsel for the Plaintiff*